IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANODYNE THERAPEUTICS, LLC,
a Colorado limited liability company;
ANODYNE THERAPY, LLC, a Florida
limited liability company; MEDASSIST
OP, INC., a Florida corporation; and
ORTHABILITY, INC., a Florida
corporation,

               Plaintiffs,

vs.

                                   Case No. 8:04-cv-2157-T-30TGW

ICP EDUCATIONAL RESOURCES LLC
d/b/a FASTERHEALING.COM, an
Arizona limited liability company; and
TOM NEUMAN, an individual,

               Defendants.

JUDGMENT, PERMANENT INJUNCTION, FINDINGS
OF FACT AND CONCLUSIONS OF LAW

      The Court, on stipulation of Plaintiffs ANODYNE THERAPEUTICS, LLC;

ANODYNE THERAPY, LLC; MEDASSIST OP, INC. and ORTHABILITY, INC.,

hereinafter Plaintiffs, and Defendants ICP EDUCATIONAL RESOURCES LLC and

TOM NEUMAN, hereinafter Defendants, hereby finds as follows:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1.      Anodyne Therapeutics, LLC is a Colorado limited liability company, with its

headquarters and principal place of business located in Denver, Colorado.

2.      Anodyne Therapy, LLC, is a Florida limited liability company; MedAssist

Op, Inc. ("MedAssist") and Orthability, Inc. ("Orthability") are both Florida

925788v1

corporations, all having their headquarters and principal places of business in Tampa, Florida.

3.      Plaintiffs have developed, advertised, marketed, offered to sell, sold and distributed photo-thermal therapeutic devices known as the Anodyne Therapy System ("ATS") throughout the United States.

4.      Plaintiffs have invested significant resources into marketing and promoting their name, their products and the technology embodied therein.

5.      ICP Educational Resources LLC d/b/a Fasterhealing.com ("ICP") is an Arizona limited liability company with its headquarters and principal place of business located in Phoenix, Arizona and Tom Neuman is an individual residing at 2011 E. Renee Drive, Phoenix, Arizona. Tom Neuman is the owner and sole member of ICP Educational Resources, LLC.

6.      The Court has jurisdiction over the subject matter hereof and over the parties hereto.

7.      All persons or entities needed for a just adjudication are before this Court.

8.      Plaintiffs have legal standing to bring their claims against Defendants.

9.      On April 3, 2006, the parties entered into a Settlement Agreement for the purposes of resolving this Action, which Settlement Agreement is attached hereto as Exhibit A, incorporated herein by reference, and made a part hereof. On November 8, 2006, the Parties entered into a Release effectuating the terms of the Settlement Agreement and the terms hereof, which Release is attached hereto as Exhibit B, incorporated herein by reference, and made a part hereof.

925788v1

2

**Defendants' Activities**

10.     Defendants helped to develop, marketed, advertised, promoted, offered to sell, sold and distributed photo-thermal therapeutic devices throughout the United States in competition with ATS.  Specifically, Defendants marketed, advertised, promoted, offered to sell, sold and/or distributed photo-thermal therapeutic devices in competition with ATS throughout the United States under the product names Universal Pad, Podiatric Pad, XL Pad, Micro Pad, Six Pad Podiatric Pro Combo Controller, Four Pad Podiatric Pro Combo Controller, Podiatric Mini-Pro Controller, Single Pad Controller and Dual Pad Controller, and the trademarks RevitaLight and/or RevitaMed.

*Defendants' Diode Array Pads*

11.     Defendants advertise, market, promote, distribute, use, offer for sale and sell and have advertised, marketed, promoted, distributed, used, offered for sale and sold in the past flexible pads containing arrays of light emitting diodes ("LEDs"). Hereinafter, the terms "Diode Array Pad" and "Pad" will refer to one or more of the flexible pads containing arrays of LEDs which are being sold or have been sold by Defendants under the trademarks RevitaLight and/or RevitaMed, to wit, the **Universal Pad**, an exemplar of which was marked as deposition exhibit Device QQ; the **Podiatric Pad**, also sometimes referred to by Defendants and others as the "Podiatric Boot," an exemplar of which was marked as deposition exhibit Device N; the **XL Pad**, also sometimes referred to by Defendants and others as the "Back Pad," an exemplar of which was marked as deposition exhibit Device HH; and the

925788v1

**MicroPad**, also sometimes referred to by Defendants and others as the "Mini-Pad," an exemplar of which was marked as deposition exhibit Device GG.

***Defendants' Control Units***

12.     Within the RevitaLight and/or RevitaMed product lines, Defendants have sold five types of control units, also referred to as controller boxes, for use with their Diode Array Pads. The controller boxes deliver energy to each of the Diode Array Pads so that the Pads can deliver photo-thermal therapy. Hereinafter, the terms "Control Unit," or "Controller" will refer to one or more of the five control unit boxes which are being sold or have been sold by Defendants, to wit, the **Six Pad Podiatric Pro Combo Controller**, an exemplar of which was marked as deposition exhibit Device LL; the **Four Pad Podiatric Pro Combo Controller**, an exemplar of which was marked as deposition exhibit Device Q; the **Podiatric Mini-Pro** Controller, an exemplar of which was marked as deposition exhibit Device JJ; the **Single Pad Controller**, exemplars of this which were marked as deposition exhibits Devices P and OO; and the **Dual Pad Controller**, an exemplar of which was marked as deposition exhibit Device KK.

13.     The Six Pad Podiatric Pro Combo Controller, the Four Pad Podiatric Pro Combo Controller, the Podiatric Mini-Pro Controller, the Single Pad Controller and the Dual Pad Controller will operate any of the Diode Array Pads.

14.     Hereinafter, the combination of any one or more of the RevitaMed Diode Array Pads together with any of the RevitaMed Control Units will be referred to herein as a "RevitaMed Device."

4

925788v1

15.    Light Emitting Designs ("LED"), a company operated by David Melone ("Melone") has at all relevant times manufactured the RevitaMed Devices for and on behalf of Defendants.

16.    Defendants have marketed, advertised, and promoted their devices for the treatment of numerous conditions, including but not limited to, neuropathy and the symptoms of neuropathy, increased circulation, reduction of pain and acute injury trauma, arthritis, fibromyalgia, tendonitis, and carpal tunnel syndrome.

**Patents**

17.    On October 25, 1994, US Letters Patent No. 5,358,503 entitled *Photo-Thermal Therapeutic Device and Method* ("the '503 Patent") was duly and legally issued to inventors Dale E. Bertwell and Joseph P. Markham, and the entire right, title and interest to the '503 Patent was assigned to Anodyne Therapeutics, LLC.

18.    Anodyne Therapeutics LLC, in turn, granted Anodyne Therapy, LLC an exclusive license to manufacture, sell and distribute the products and to use the method of the '503 Patent.

19.    The '503 Patent describes an apparatus and method which includes a plurality of diodes for simultaneous or selective treatment of an area of the skin and adjacent subcutaneous structure of a patient utilizing photo energy and therapeutic heat.

20.    The RevitaMed Devices, when used as intended, infringe the '503 Patent.

21.    The '503 Patent is valid and enforceable.

22.    On August 19, 2003, US Letters Patent No. 6,607,550 entitled *Method of Treating Neuropathy Using a Photo Energy Device* ("the '550 Patent") was duly and

925788v1

legally issued to inventor Dale E. Bertwell and the entire right, title and interest to the '550 Patent was assigned to Anodyne Therapeutics, LLC.

23.     Anodyne. in turn. licensed the '550 Patent to Anodyne Therapy on an exclusive basis to manufacture, sell and distribute on a wholesale basis applications of and products and methods incorporating the technology of the '550 Patent.

24.     Pursuant to its exclusive licenses with Anodyne. Anodyne Therapy has developed and is manufacturing products applying and incorporating the technology and methods of the '503 Patent and the '550 Patent. which products are known as the ATS.

25.     MedAssist is exclusively licensed by Anodyne Therapy to manufacture, market, sell, lease and distribute ATS on a retail basis in certain markets.

26.     Orthability is exclusively licensed by Anodyne Therapy to manufacture, market, sell, lease and distribute ATS on a retail basis in certain other markets.

27.     The '550 Patent describes a method for the reduction of sensory impairment due to peripheral neuropathy comprising placing an apparatus which provides photo-energy in proximity to the skin and/or subcutaneous structures suffering from sensory impairment. and irradiating the skin and/or subcutaneous structures with the apparatus with sufficient duration, intensity and frequency to reduce sensory impairment.

28.     The RevitaMed Devices, when used as intended, infringe the '550 Patent.

29.     The methods promoted by Defendants in the use of the RevitaMed Devices infringe the '550 Patent.

30.     The '550 Patent is valid and enforceable.

925788v1

6

31.    The findings of validity, enforceability, and infringement are binding and constitute res judicata between the parties, their successors and assigns.

32.    Plaintiffs have suffered damages as a result of Defendants' infringement of the '503 Patent and '550 Patent.

**Lanham Act Violations**

33.    Defendants advertise, promote, market, offer to sell, and sell their infrared therapy products in commerce.

34.    Plaintiffs and Defendants advertise, promote, offer to sell and sell their products to similar markets. Plaintiffs and Defendants both attend trade shows, market to the medical community, including doctors, physical therapists and podiatrists, and target patients suffering from and health care providers who treat, among other conditions, diabetic peripheral neuropathy, pain, and loss of circulation.

*Defendants' Promotional Materials*

35.    Numerous websites have been registered to Defendants, including www.healahorse.com, www.sportsmedtechnologies.com, www.tom.store.shoppee.com, www.fasterhealing.com, www.revitamedtherapy.com, and www.revitamed.com. Defendants use their websites to advertise, market, promote, offer to sell and sell their products.

36.    Specifically, Defendants have advertised, marketed, promoted and offered to sell infrared therapy devices on www.tom.store.shoppee.com, www.fasterhealing.com, www.revitamed.com, and www.revitamedtherapy.com.

7

925788v1

37.     Neuman also utilized the website. www.fasterhealing.com, to advertise, market, promote, offer to sell and sell Plaintiffs' products during his former capacity as a contract sales agent for Plaintiff MedAssist.

38.     Neuman continued to utilize www.fasterhealing.com to advertise, market, promote, offer to sell and sell infrared therapy devices other than Plaintiffs' products subsequent to his business relationship with Plaintiff MedAssist.

39.     Defendants also have advertised, marketed, promoted, offered to sell and sold their infrared therapy devices on the website www.revitamedtherapy.com and www.revitamed.com.

40.     While Neuman was engaged as a contract sales agent for Plaintiff MedAssist, Defendants created a disk (the "Disk") comprised of Plaintiffs' materials and studies pertaining to Plaintiffs' products for the purpose of advertising, marketing and promoting Plaintiffs' infrared devices, and for educating people regarding Plaintiffs' technology and light therapy.

41.     Following the termination of Neuman as a contract sales agent for MedAssist, Defendants adapted the Disk for the purpose of advertising, marketing and promoting infrared therapy devices other than Plaintiffs' products, including the RevitaMed Devices.   Defendants created and used three (3) different versions of the Disk, (hereinafter collectively "the Disks").

***Plaintiffs' Studies and Clinical Trials***

42.     From in or about 1996 to the present, Plaintiffs and others have conducted clinical trials and studies relating to the ATS and MIRE technology and utilizing the ATS. The results of these clinical trials and studies are specific to the use of ATS and

have been and will continue to be published in peer-reviewed medical journals ("Studies").

43.    The Studies include reports on the efficacy and results of Plaintiffs' ATS for wound healing, pain reduction and peripheral neuropathy.

44.    Defendants included on their website www.fasterhealing.com a section entitled bibliography, which contains a variety of papers. These papers have included several of the Studies that exclusively utilized ATS.

45.    Defendants also have included certain of the Studies on the Disks. None of the Studies included on the Disks utilized the RevitaMed Devices.

46.    At no time following the termination of Neuman's engagement as a contract sales agent for MedAssist did Plaintiffs license, consent to, authorize, acquiesce to or give Defendants permission to reproduce the papers or Studies on Defendants' website or Disks.

47.    The Court finds that Defendants' use of the papers and Studies is likely to cause confusion among customers and potential customers and is likely to deceive as to the affiliation, connection or association of the RevitaMed Devices with Plaintiffs or Plaintiffs' products.

48.    The Court finds that Defendants' use of the papers and Studies is likely to cause confusion and deception in the marketplace and among consumers regarding the origin, sponsorship or approval by Plaintiffs of the RevitaMed Devices.

49.    The Court finds that Defendants' use of the papers and Studies in Defendants' advertising, marketing and promotional materials misrepresents the origin of the RevitaMed Devices.

9

925788v1

50.   The Court finds that Defendants' use of the Studies in commerce did not constitute a fair use.

51.   The Court finds that the above-detailed activities by Defendants constitute violations of the Lanham Act, 15 U.S.C. § 1125.

***The Anodyne Brochure***

52.   Plaintiff Anodyne Therapy created an original marketing brochure (the "Anodyne Brochure") that depicts and describes the ATS, which incorporates the technology of the `503 Patent and the `550 Patent (Exhibit 6 to the Complaint).

53.   Defendants have created, produced, shown, used and distributed marketing and promotional materials which include exact copies of text and images contained in the Anodyne Brochure (Exhibit 7 to the Complaint).

54.   At no time after Neuman's termination as a contract sales agent for MedAssist did Plaintiffs consent to, acquiesce to, authorize or license Defendants to create, produce, show or use or distribute copies of the Anodyne Brochure, any portion thereof or any text contained therein.

55.   Defendants' use of a brochure that was essentially identical to the Anodyne Brochure was likely to cause confusion among customers and potential customers regarding the source of the RevitaMed Devices and whether such devices were associated with Plaintiffs.

56.   The Court finds that Defendants' use of marketing materials that contain identical copies of text and images as Plaintiffs' marketing materials is likely to cause consumer confusion in the marketplace, and is likely to deceive as to the affiliation, connection and association of Defendants with Plaintiffs.

57.     The Court finds that Defendants, in their brochure (Exhibit 7 to the Complaint) have misrepresented the origin of their goods, *i.e.*, the RevitaMed Devices.

58.     The Court finds that Defendants' copying of Plaintiffs' Anodyne Brochure in commerce did not amount to fair use.

59.     The Court finds that the above-detailed activities by Defendants constitute violations of the Lanham Act, 11 U.S.C. § 1125.

***Plaintiffs' Testimonials***

60.     Defendants' website www.fasterhealing.com has also contained a section entitled "References," which consisted of testimonials and endorsements of individuals who had used ATS ("Anodyne Testimonials").

61.     At no time after Neuman's termination as a contract sales agent for MedAssist did Plaintiffs authorize, consent to or give Defendants permission to reproduce the Anodyne Testimonials on their website, www.fasterhealing.com.     Defendants reproduced the Anodyne Testimonials without Plaintiffs' permission or authorization.

62.     The Court finds that by including the Testimonials on their website, Defendants were likely to cause confusion and deception in the marketplace and among consumers as to the affiliation, connection and association of Plaintiffs with Defendants.

63.     The Court finds that by including the Testimonials on their website, which advertises and promotes the RevitaMed Devices, Defendants have misrepresented the origin of such products.

925788v1

64. The Court finds that Defendants' use of Plaintiffs' Testimonials in commerce did not amount to fair use.

65. The Court finds that the above-detailed activities by Defendants constitute violations of the Lanham Act, 15 U.S.C. § 1125.

## Trademarks

### *Plaintiffs' Trademarks*

66. On August 23, 2004, Plaintiff MedAssist filed an application in the United States Patent and Trademark Office ("USPTO") for a Certificate of Registration for the MIRE trademark, which was assigned Serial Number 78/472,090.

67. On September 23, 2003, the USPTO issued a Certificate of Registration for the trademark, ANODYNE, to Plaintiff MedAssist, bearing Registration No. 2,766,332.

68. The Court finds that Plaintiff MedAssist owns a valid and enforceable trademark in the term ANODYNE.

69. The Court finds that MedAssist has not abandoned its trademarks ANODYNE or MIRE.

70. Plaintiff MedAssist is currently, and at all times since the creation of the ANODYNE and MIRE marks has been, the owner of all right, title and interest in and to these marks.

71. MedAssist's trademark ANODYNE has acquired secondary meaning.

72. At all times, Defendants have had actual knowledge that ANODYNE and MIRE were being used by Plaintiff MedAssist to identify its goods and services.

925788v1

73.     Plaintiffs have never authorized, acquiesced to, or gave permission to Defendants to use Plaintiff MedAssist's trademarks at any time after the termination of Neuman as a contract sales agent for MedAssist.

***Defendants' Websites***

74.     Defendants have included MedAssist's trademark ANODYNE on certain of their websites.

75.     At no time after the termination of Neuman as a contract sales agent for MedAssist did Plaintiff MedAssist authorize Defendants' use of its trademarks ANODYNE or MIRE or acquiesce to or give Defendants permission to use MedAssist's trademarks ANODYNE or MIRE in Defendants' advertising, marketing or promotional materials.

76.     By using the ANODYNE trademark in Defendants' marketing materials and on its websites, Defendants have used Plaintiff MedAssist's trademark ANODYNE in commerce without authorization.

77.     Defendants' use of Plaintiff MedAssist's trademark ANODYNE does not constitute fair use.

78.     Defendants have violated Plaintiff MedAssist's rights in its trademark ANODYNE.

79.     By using Plaintiff MedAssist's trademark ANODYNE, Defendants have harmed Plaintiffs and are likely to have caused confusion in the marketplace.

80.     The Court finds that Defendants' actions constitute trademark infringement in violation of 15 U.S.C. § 1114.

925788v1

## ADDITIONAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

81.     As a result of Defendants' trademark and patent infringement and violations of the Lanham Act, Plaintiffs sustained damage.

82.     Plaintiffs and Defendants are each represented by legal counsel and have been represented by such counsel throughout this litigation.

83.     Plaintiffs and Defendants have each read this Judgment, Permanent Injunction, Findings of Fact and Conclusions of Law and each consent to the entry of the proposed Order, Judgment and Permanent Injunction.

## ORDER, JUDGMENT AND PERMANENT INJUNCTION

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT Defendants, together with their respective officers, directors, employees, agents, servants, distributors, contractors, manufacturers and all persons and entities acting in direct or indirect concert or participation with them, are hereby permanently enjoined:

        A.     from manufacturing, distributing, offering for sale, selling, or otherwise alienating, Defendants' RevitaMed product line, consisting of the Diode Array Pads, and the Six Pad Podiatric Pro Combo Controller, the Four Pad Podiatric Pro Combo Controller, the Podiatric Mini-Pro Controller, the Single Pad Controller and the Dual Pad Controller in conjunction with Diode Array Pads, and any and all other infrared devices that infringe Plaintiffs' patent 5,358,503 issued October 25, 1994 ("the '503 patent") and/or patent 6,607,550 B1 issued August 19, 2003 ("the '550 patent"); and

        B.     from using or displaying, except as a fair use, the ANODYNE® Mark and/or the MIRE™ Mark in connection with the

925788v1

operations, advertising, marketing, offering for sale, selling, distributing, promotions, packaging and other activities in connection with Defendants' business, products or websites, including metatags and sponsored links (however, use of the ANODYNE® Mark and/or the MIRE™ Mark as metatags or sponsored links shall not constitute a fair use); and

      C.     acting in any manner which infringes the '503 Patent, the '550 Patent, or Plaintiffs' trademarks ANODYNE or MIRE; and

      D.     from advertising, marketing and promotional efforts, including appearances at trade shows, relating to the RevitaMed Devices and any and all other infrared devices that infringe the '503 patent and/or the '550 patent; and

      E.     assisting, aiding or abetting any other person or business entity from engaging in or performing any of the above-described acts.

Notwithstanding the foregoing, warranty work performed by the manufacturer or other third party approved by Plaintiffs, approval not to be unreasonably withheld, in connection with Defendants' products sold prior to June 3, 2006, shall not constitute infringement.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Defendants will pay to Plaintiffs a Royalty Sum in the amount of Ten Percent on the gross sale of each RevitaMed Device sold by Defendants between the period from and including April 3, 2006, through and including June 2, 2006, ("the Sales Period") payable by no later than November 15, 2006. Defendants will provide Plaintiffs an accounting of all gross sales of RevitaMed Products in the form of copies of each invoice associated

925788v1

with each RevitaMed Product sold during the Sales Period, including the name of the purchaser and the sales price. The Royalty Sum shall be paid by cashier's check or checks to Anodyne Therapy, LLC by no later than November 15, 2006.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that within five (5) days of entry of this Judgment, Defendants will notify the Court in writing that they:

A. have destroyed all documents, records and advertising, promotional or marketing materials that contain Plaintiffs' trademarks ANODYNE or MIRE, relate in any way to Plaintiffs' products, patents and/or technology embodied therein, or include or reference studies or testimonials relating to Plaintiffs' products, patents and/or technology embodied therein, whether stored and maintained in hard copy or electronically, and whether stored, created or maintained by Defendants or anyone acting in direct or indirect concert or participation with Defendants, and whether retyped, reprinted, reformatted or altered by Defendants or anyone acting in direct or indirect concert or participating with Defendants; and

B. have modified their website(s) and have removed from their website(s) any and all information relating to the RevitaMed Devices, Plaintiffs' products, patents, trademarks, copyrights, studies or any materials or information relating to Plaintiffs, including any and all metatags and/or sponsored links; and

C. have altered all of their marketing, advertising and promotional materials to be consistent with the terms of this Judgment, including but not

16

limited to removing any and all references to the RevitaMed Devices, Plaintiffs' patents and/or technology embodied therein, trademarks, copyrights, studies and any other references to Plaintiffs' products; and

D. have destroyed their inventory of letterhead, brochures, pamphlets, business cards, trade show displays and any and all other materials and things, including but not limited to electronically-stored documents that contain or illustrate the RevitaMed Devices.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that, in the event Defendants, or either of them, breach any term of the Settlement Agreement, Release, Judgment or Permanent Injunction, Plaintiffs shall be entitled to entry of a monetary judgment in favor of Plaintiffs and against Defendants, jointly and severally, in the amount of $3.5 million as damages for their infringements, including fees and costs.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that in the event any party violates the Settlement Agreement, Release, Judgment or Permanent Injunction or initiates proceedings to have the Settlement Agreement, Release, Judgment or Permanent Injunction set aside or declared unenforceable, then the prevailing party shall be entitled to its reasonable attorney's fees, costs and expenses, through appeal.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that each party shall bear his or its own respective costs of this litigation.

17

925788v1

**THE CLERK OF THE COURT IS HEREBY ORDERED TO ENTER THIS JUDGMENT.**

Dated: _Nov. 30_, 2006

_____
The Honorable James S. Moody, Jr.
United States District Judge

925788v1

**THE CLERK OF THE COURT IS HEREBY ORDERED TO ENTER THIS JUDGMENT.**

Dated: _____, 2006

_____

The Honorable James S. Moody, Jr.
United States District Judge

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANODYNE THERAPEUTICS, LLC,
a Colorado limited liability
company, ANODYNE THERAPY, LLC.,
a Florida limited liability
company, MEDASSIST OP, INC.,
a Florida corporation, and
ORTHABILITY, INC.,a Florida
corporation,

        Plaintiffs,

v.                    Case No. 8:04-CV-2157-T-30TGW

ICP EDUCATIONAL RESOURCES, LLC
d/b/a Fasterhealing.com, an
Arizona limited liability company;
and TOM NEUMAN, an individual,

        Defendants.

_____/

## SETTLEMENT AGREEMENT

The parties agree:

1. The case will be settled according to the following terms. Counsel for Plaintiffs shall provide a first draft of the documents to effectuate the agreements herein as soon as reasonably possible. Each side agrees to cooperate fully in effectuating the intent of this Agreement. Each side agrees to pay equally its share of the mediation fee.

2. Defendants will design a new product having a permanent rigid, non-flexible barrier over the diodes, subject to Plaintiffs' approval within ten days of submission, such approval not to be unreasonably withheld. Defendants will confine the marketing of the new products to veterinary uses and cosmetic (neck and above) uses.

3. Within 30 days hereof Defendants will cease marketing and promotional efforts, including appearance at trade shows, in connection with their existing product line. Within 30 days

EXHIBIT

A

ALL-STATE LEGAL®

hereof Defendants will take down their website. Defendants immediately will send a letter, approved by Plaintiffs, to their distributors to cease and desist their activities that are inconsistent with the terms of this settlement. Plaintiff will take no action with respect to the claims in the lawsuit against any of Defendants' current employees or distributors who comply with this Agreement; however this provision will not preclude Plaintiffs from taking action against Angela Mullet, Adam Anshel, Mike Cristoi or their respective affiliated companies regarding any matter, provided that if Plaintiffs take action against any of the above for patent infringement, such action will exclude products Defendants sold to them prior to the date of this Agreement.   Within 30 days hereof Defendants will recall all samples of their existing product line previously distributed to potential purchasers. Defendants represent their inventory consists of no more than 175 units. In no event will any order be filled after 60 days from this date. In the interim Defendants will pay 10% royalties on gross sales of the accused products during the transition. The final agreement will make provisions for reasonable accounting.

    4. The parties agree that the Court will enter judgment against Defendants and all those working in concert with them, directly or indirectly, including a permanent injunction, based on findings of fact and conclusions of law that the '503 and '550 patents are valid and enforceable, and that Defendants' actions constitute patent infringement, trademark infringement and unfair competition and violations of the Lanham Act. Defendants shall make alterations to their websites and other marketing and promotional materials as may be necessary to be consistent with the undertakings herein.

    5. The parties will release all other claims against the other parties, and Plaintiffs will release on a compromise basis their claims for copyright infringement, violation of 15 U.S.C. §

52, breach of contract and violation of the Florida Deceptive and Unfair Trade Practices Act, and Defendants will release on a compromise basis their counterclaims for interference with existing business relationships and prospective business advantage, unfair competition and declaratory judgment regarding non-infringement of copyrights.

6.   The parties will stipulate that the Court retain jurisdiction of the case.  In the event of breach by any Defendant of the injunction or the settlement agreement, the parties stipulate to the entry of judgment against all Defendants, jointly and severally, in the amount of $3.5 million as damages for the infringements, plus fees and costs.

7.   Defendants agree not to disparage Plaintiffs, their personnel or products.  Plaintiffs agree not to disparage Defendants, their personnel or their new products.

Done April 3, 2006 in Tampa, Florida.

_____
Peter J. Grilli, Esquire
Florida Bar No. 237851
Mediator
Peter J. Grilli, P.A.
3001 West Azeele Street
Tampa, Florida  33609
813.874.1002  Fax: 813.874.1131


_____
Representative for Plaintiffs Anodyne Therapy, LLC, MedAssist Op, Inc. and Orthability, Inc.

_____
Representative for Plaintiff Anodyne Therapeutics, LLC

_____
Counsel for Plaintiffs

Defendant Tom Neuman for himself and as representative for
Defendant ICP Educational Resources, LLC

Counsel for Defendants

52, breach of contract and violation of the Florida Deceptive and
Unfair Trade Practices Act, and Defendants will release on a
compromise basis their counterclaims for interference with
existing business relationships and prospective business
advantage, unfair competition and declaratory judgment regarding
non-infringement of copyrights.

6.  The parties will stipulate that the Court retain
jurisdiction of the case.  In the event of breach by any
Defendant of the injunction or the settlement agreement, the
parties stipulate to the entry of judgment against all
Defendants, jointly and severally, in the amount of $3.5 million
as damages for the infringements, plus fees and costs.

7.  Defendants agree not to disparage Plaintiffs, their
personnel or products.  Plaintiffs agree not to disparage
Defendants, their personnel or their new products.

Done April 3, 2006 in Tampa, Florida.

Peter J. Grilli, Esquire
Florida Bar No. 237851
Mediator
Peter J. Grilli, P.A.
3001 West Azeele Street
Tampa, Florida  33609
813.874.1002  Fax: 813.874.1131

Representative for Plaintiffs Anodyne Therapy, LLC, MedAssist Op,
Inc. and Orthability, Inc.

Representative for Plaintiff Anodyne Therapeutics, LLC

Counsel for Plaintiffs

## RELEASE

THIS RELEASE ("Agreement") is made as of the 8th day of November, 2006, by and among Anodyne Therapeutics, LLC, Anodyne Therapy, LLC, Medassist Op, Inc. and Orthability, Inc. (hereinafter collectively referred to as "Anodyne" or "Plaintiffs") and Defendants ICP Educational Resources LLC (hereinafter collectively referred to as "ICP") and Tom Neuman (hereinafter referred to as "Neuman"). ICP and Neuman hereinafter will sometimes be collectively referred to as "Defendants."

In consideration of the mutual promises, covenants and agreements contained herein, and consistent with the Settlement Agreement entered into by the Parties on April 3, 2006 ("Settlement Agreement"), and the stipulated Consent Judgment, Injunction, Findings of Fact and Conclusions of Law agreed to by the Parties on November 8, 2006, the parties to this Release agree as follows:

1.     **Parties.**  The parties to this Agreement are Anodyne Therapeutics, LLC, Anodyne Therapy, LLC, Medassist Op, Inc., Orthability, Inc., ICP Educational Resources, LLC, and Tom Neuman.

2.     **The Proceedings.**  On September 28, 2004, Anodyne filed a Complaint against Defendants in the United States District Court, Middle District of Florida, Tampa Division. The Complaint is styled as: <u>Anodyne Therapeutics, LLC, a Colorado limited liability company; Anodyne Therapy, LLC, a Florida limited liability company; Medassist Op, Inc., a Florida corporation; and Orthability, Inc., a Florida corporation, Plaintiffs v. ICP Educational Resources LLC d/b/a/ Fasterhealing.com, an Arizona limited liability company; and Tom Neuman, an individual, Defendants,</u> Case No. 8:04-cv-2157-T-30TGW (hereinafter referred to as the "Lawsuit").

EXHIBIT

ALL STATE LEGAL®

B

3.    **Consent to Judgment, Injunction, Findings of Fact and Conclusions of Law.**
The Parties consent to the entry of Judgment, Injunction, Findings of Fact and Conclusions of
Law in the form as agreed on November 8, 2006, and attached hereto as Exhibit A ("Judgment"),
in the Lawsuit.

4.    **Release of Plaintiffs.**  ICP and Neuman, jointly and severally, hereby remise,
release, discharge and forever acquit Anodyne Therapeutics, LLC, Anodyne Therapy, LLC,
MedAssist Op, Inc., and Orthability, Inc., together with each of their officers, directors,
employees, shareholders, attorneys, agents, successors and assigns, from any and all claims,
whether known or unknown, including but not limited to all claims which were or could have
been raised either as a compulsory or permissive counterclaim in the Lawsuit.

5.    **Release of ICP and Neuman.**  Conditioned upon the Court's entry of the
Judgment, Defendants' making the notifications to the Court required by the Judgment, payment
of the royalty sum, and submission of the required documentation thereof, Anodyne
Therapeutics, LLC, Anodyne Therapy, LLC, MedAssist Op, Inc. and Orthability, Inc. release,
remise, discharge and forever acquit ICP and Neuman, together with each of their officers,
directors, employees, shareholders, attorneys, agents, successors and assigns, from any and all
claims, whether known or unknown, including but not limited to all claims which were or could
have been raised either as a compulsory or permissive counterclaim in the Lawsuit, except for
claims adjudicated pursuant to the Judgment or which Defendants agreed to be adjudicated
against them in the Settlement Agreement, to wit, infringement of the '503 Patent, infringement
of the '550 Patent, infringement of Plaintiffs' trademarks ANODYNE and MIRE, and Plaintiffs'
claims under the Lanham Act.

6.   **Extent of General Releases.**  Plaintiffs and Defendants each acknowledges and agrees that the releases provided in this Agreement shall constitute a general release and shall extend to all claims, whether or not known or suspected by Plaintiffs and Defendants prior to the execution of this Release.  In connection with such waiver and relinquishment, Plaintiffs and Defendants each acknowledges that it or he is aware that it or he may discover facts in addition to or different from those which it or he currently knows or believes to be true with respect to the subject matters of this Release, but that it is its or his intention hereby fully, finally and forever to settle and release all matters which now exist, may exist or previously existed between the Parties, whether or not now known or unknown, suspected or unsuspected.  In furtherance of such intent, the releases given herein shall be and shall remain in effect as full and complete releases, notwithstanding the discovery or existence of any such additional or different facts.

7.   **Binding Date of This Agreement.**  This Release shall become binding and effective on the date the Judgment becomes final and non-appealable.

8.   **Severability.**   In the event any provision of this Release or the Settlement Agreement shall be deemed unenforceable by a court of final and competent jurisdiction, then the remaining portion of this Release shall continue to remain in full force and effect, and remain fully binding on the parties hereto.

9.   **Binding Effect.**  This Release and the Settlement Agreement shall be binding on the parties hereto and their respective successors, heirs and assigns.

10.   **Non-Assignment Covenant.**  The parties hereto each represent that they have not, by assignment, agreement or contract, or by any act, conduct or action, vested in any person or entity all or any portion of any claim referred to herein.

11.    **Governing Law.**  This Release and the Settlement Agreement shall be construed in accordance with the laws of the United States and, to the extent not inconsistent, the State of Florida.

12.    **Multi-Counterpart/Facsimile Provision.**  This Release may be executed in multiple counterparts, and facsimile signatures and counterparts shall be deemed an original of the Release for all purposes.

13.    **Voluntary Acceptance Covenant.**  Each of the parties hereto represents to one another that they are legally competent to execute this Release, and that before signing, each of the parties hereto declares that the terms of this Release have been completely read, are fully understood and voluntarily accepted by the parties hereto for the purpose of fully and finally settling all claims and terminating all litigation and have been discussed with counsel of their own choice prior to the execution of this Release.

14.    **Entire Agreement.**  This Release, together with the Settlement Agreement dated April 3, 2006, and the stipulated Judgment, Injunction, Findings of Fact and Conclusions of Law, Exhibit A hereto, represents the entire agreement of the parties with respect to the subject matter herein, and no representations of either party to the contrary, oral or otherwise, shall have any affect upon the terms hereof. This Release and the Settlement Agreement may not be modified or amended except by written agreement signed by the parties hereto.

IN WITNESS WHEREOF, the parties hereto have executed this Release November 8, 2006.

ANODYNE THERAPEUTICS, LLC

By: _____

Title: _____ *MANAGER* _____

878476v1                              - 4 -

ANODYNE THERAPY, LLC

By: _Craig Lutz_____

Title: _President_____



MEDASSIST OP, INC.

By: _Craig Lutz_____

Title: _President_____


ORTHABILITY, INC.

By: _Craig Lutz_____

Title: _President_____



ICP EDUCATIONAL RESOURCES, LLC
d/b/a FASTERHEALING.COM

By: _Tom Neuman_____

Title: _PRES_____


TOM NEUMAN

_Tom Neuman_____


878476v1                           - 5 -